[PHILADELPHIA, APRIL 15TH, 1839.]

FASSIT and Others *against* PHILLIPS and Others.

IN EQUITY.

An assignment by partners for the benefit of creditors, purported to convey all their partnership effects, &c. and certain real estate belonging to one of the partners, and stipulated for a general release. A bill was filed, setting forth, that the partners owned separate real estate, which was not mentioned in the assignment, and an injunction was granted to restrain the assignees from proceeding under the assignment. It appeared by the answer that the only separate real estate of either partner, which had not been mentioned in the assignment, was a house and lot of ground encumbered beyond their full value. The Court, on motion, dissolved the injunction.

THIS cause came before the Court on a motion to dissolve an injunction, which had been granted on the filing of a bill by James Fassit, Theodore L. Fassit and Alfred Fassit, co-partners in trade, as James Fassit & Co., against Isaac Phillips, Joseph L. Moss, Joseph Mora Moss and David Samuel.

The bill set forth that the complainants had been in the habit of transacting business with Isaac Phillips and Joseph L. Moss, who traded in the City of Philadelphia under the firm of R. & I. Phillips ; that the said R. & I. Phillips, in consequence of their mutual dealings and business transactions became indebted unto the complainants in a large sum of money, for which they obtained judgment by

confession against the said R. & I. Phillips for nineteen thousand five hundred and ninety-two dollars and ninety-seven cents, being the amount then actually due, in the District Court for the City and County of Philadelphia to September Term, 1837, No. 1318, which judgment now stands unreversed and in full force, and that the said R. & I. Phillips have never satisfied the said judgment or any part thereof; that the said R. & I. Phillips by deed, dated the twenty-second day of March, eighteen hundred and thirty-seven, (a copy of which was annexed to the bill,) transferred and assigned unto Joseph Mora Moss and David Samuel certain of their property, real and personal, in trust, after the payment of certain preferences, for the benefit of all the creditors of the said R. & I. Phillips : that the said R. & I. Phillips, by a certain other deed, dated the twenty-second day of June, eighteen hundred and thirty-seven, (a copy of which was also annexed,) transferred and assigned unto Joseph Mora Moss and David Samuel, certain of their property, real and personal, in trust, after the payment of certain preferences, for the benefit of such of their creditors as should on or before certain periods of time therein limited, execute unto the said R. & I. Phillips a full, valid, and general release of all their claims and demands. The bill further charged that the said first mentioned deed of assignment, dated March the twenty-second, eighteen hundred and thirty-seven, was fraudulent and void ; that it assigned the partnership property and effects of the said R. & I. Phillips, for the payment of the several and personal liabilities of the said Isaac Phillips and Joseph L. Moss, in preference to the partnership debts of the said R. & I. Phillips; the said R. & I. Phillips being at that time insolvent: that the said deed of assignment, dated the 22d of June, 1837, was fraudulent and void : that it did not assign all the property of the said R. & I. Phillips; that Joseph L. Moss, one of the partners of the said firm, did at the time of the assignment stand seised, and was the owner of certain real estate, described and mentioned in a schedule annexed to the bill, which was not transferred by it.  That Isaac Phillips, another partner of the said firm, was at the time of the assignment the owner, and had an interest in certain real estate (mentioned and described in another schedule annexed,) not conveyed by it, and that the last mentioned deed of assignment made no mention of sundry pieces of property, (a schedule of which was also annexed,) in which the said R. & I. Phillips had an interest at the time they were executing the said deed; that the said Joseph Mora Moss and David Samuel, assignees of the said R. & I. Phillips, had taken charge of large quantities of property under the assignment of the 22d March, 1837, had reduced the same into their possession, were proceeding to satisfy the preferences, and intended to hold the residue under the assignment of the 22d June, 1837, and shortly to distribute the same to the releasing creditors of R. & I. Phillips; that the said Joseph Mora Moss and David Samuel, assignees of the said R. & I.

Phillips, had taken charge of large quantities of property, had reduced the same into their possession, and intended shortly to distribute unto the releasing creditors, such proceeds as they may have realized as agents under the assignments; that the complainants had refused to execute the stipulated release, or to assent to the assignments; that the said Isaac Phillips, Joseph L. Moss, Joseph Mora Moss and David Samuel had absolutely refused to satisfy the claim of the complainants, or any part thereof, or to admit them to a share of the assigned property.

The bill then prayed a discovery, and asked for an injunction to restrain the assignees from acting in any way under the two deeds; and also prayed for the appointment of a receiver.

The assignment of the 22d of March, 1837, (a copy of which was annexed to the bill,) purported to be made between Isaac Phillips and Joseph L. Moss composing the firm of R. & I. Phillips of Philadelphia, in the state of Pennsylvania, and Joseph M. Moss and David Samuel of the city of Philadelphia, merchants, of the second part: it recited that owing to divers losses and misfortunes in their mercantile business and operations, the parties of the first part had been compelled to suspend their payments, and conveyed to the assignees, their heirs, executors, administrators and assigns, " all and singular the joint and several property and estate of the said parties of the first part, and of each of them, real and personal, situate, lying and being, or due, owing or belonging to them or either of them, within the state of New York, and more particularly three houses and lots in Walker-street in the city of New York, and two bonds and mortgages on two other houses and lots in Walker-street aforesaid; all the merchandise on board the ship Groton now lying in the port of New York, and all merchandise, chattels or effects in the hands of Messrs. Levy and Colgate, or any other person or persons in the city of New York; all merchandise which may hereafter arrive in the said city of New York, belonging to the said parties of the first part or either of them; all debts, dues, demands, amounts and balances of accounts, due and owing, or hereafter to become due and owing to the said parties of the first part, or either of them, by Messrs. J. L. & S. Joseph & Co. of New York, or any other person or persons residing in the state of New York, and all and singular the estate, right, title, interest, property, claim and demand whatsoever both at law and in equity, of the said parties of the first part, and each and every of them, of, into, and out of the said hereby assigned premises or any and every part thereof. To have and to hold, receive and take the said premises hereby assigned, and every part thereof unto the said parties of the second part and the survivor of them, and the heirs, executors, administrators and assigns of such survivor: In trust nevertheless, and to and for the several uses and purposes hereinafter mentioned and declared of and concerning

the same; that is to say, upon trust that the said parties of the second part, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor do, and shall in such manner and at such time or times, either at public or private sale, and for cash or upon credit, and by and under such terms and prices as they shall think reasonable and proper, absolutely sell, convey and dispose of, all and singular the said estate, property and effects hereby assigned, or so much thereof as can be sold or disposed of, and also do and shall receive, collect, and get in all the residue of said premises; and by and out of the moneys which shall arise from such sale or sales, and which shall be collected, received and gotten in as aforesaid, do pay and discharge, or retain and reimburse themselves, for all such costs, charges, expenses and disbursements as may have been or shall be rightfully paid or incurred by them, or for which they shall or may be liable in and about the execution of the trusts herein contained or in any wise relating thereto, together with a just and reasonable compensation for their services in this behalf and in the execution of the trusts herein contained, and then upon the further trust that the said parties of the second part, and the survivor of them, and the executors and administrators of such survivor shall and do pay and satisfy to Messrs. Jonas Phillips & Son of London, and to the individual members of that firm and to each and to every of them, all such sum and sums of money, debts dues and demands as now are due and owing, or which are now contracted though payable hereafter, by the said parties of the first part, jointly or severally to the said Jonas Phillips & Sons, or to all, any or either of the individual members of the said firm, and also lawful interest on the said several sums from the time they respectively are due until paid, and then upon the further trust to divide and distribute all the residue of the said trust moneys, which shall have been by them raised, received and gotten in, as aforesaid, to and among the other creditors of the said parties of the first part, whether their debts be now due and owing, or are payable hereafter '*pari passu*,' or in equal rateable proportions, according to the amount of their respective past claims and demands."

Then followed a covenant for further assurance and the usual powers to the assignees.

This instrument was acknowledged and recorded in New York, on the 23d of March, 1837.

The assignment of the 22d of June, 1837, (a copy of which also was annexed,) purported to be made between Isaac Phillips of the city of Philadelphia, merchant, and Sarah his wife, and Joseph L. Moss, of the same city, merchant, and Julia his wife, the said Isaac Phillips and Joseph L. Moss being co-partners in trade under the firm of R. & I. Phillips, of the first part, and Joseph M. Moss and

(Fassit v. Phillips.)

David Samuel of the same city, merchants, of the first part: It recited that the parties of the first part, " on the day of the date of these presents are justly and truly indebted unto sundry persons in divers sums of money, which, by reason of numerous and heavy losses and reverses they are at present unable fully to pay and satisfy, but are desirous to apply and appropriate their estate and effects for and toward the payment and satisfaction of their said debts so far as the same may avail," and conveyed to the assignees, their heirs, executors, administrators and assigns, " all and singular the goods and chattels, merchandise, debts, sum and sums of money due, owing or belonging to the said R. & I. Phillips, and all securities had, taken or obtained for the same, and also all the right, title and interest, property, claim and demand of them the said R. & I. Phillips, of, in and to the same, and any and every part thereof; and the said parties of the second part, for and upon the same considerations as hereinbefore set forth have also granted, bargained and sold, aliened, enfeoffed, released and confirmed, and by these presents do grant, bargain and sell, alien, enfeoff, release and confirm unto the said parties of the second part, and to the survivor of them, his heirs, executors, administrators and assigns, all and singular the following real estate; that is to say, all that lot or piece of ground, situate on the north side of Chesnut street, at the distance of forty-two feet westward from the west side of Schuylkill Seventh street, in the city of Philadelphia, containing in front or breadth on said Chesnut street sixty-six feet, and extending in length or depth northward one hundred and fifty-eight feet to Linden-street, being the same premises which George H. Thomson and Rebecca H. his wife, granted to the said Isaac Phillips in fee by indenture bearing date on the ninth day of June, A. D. 1835, and duly recorded; and also all that certain three-story brick messuage and lot on the westerly side of Sixth street, between High and Chesnut street in the said city, containing in front or breadth on said Sixth street twenty-five feet, more or less, and of that breadth extending in length or depth westward to Decatur street one hundred and seventy-three feet, more or less, with the appurtenances, and also all that certain messuage or store and lot of ground on the east side of Delaware Front street, between Walnut and Spruce street, in the said city, containing in front or breadth in the said Front street nineteen feet, and in length or depth from the said Front street to Water street about forty-one feet, being the same premises which John Sergeant, of the city of Philadelphia, Esquire, and Margaretta his wife, by indenture bearing date the second day of June, A. D. one thousand eight hundred and twenty-five, granted and conveyed unto the said Isaac Phillips in fee, and all the right, title and interest, property, claim, estate, and demand of them, the parties of the second part or either of them, of, in or to the said mentioned real estate, with the appurtenances, to have and to hold, receive and take all and singular

the said goods and chattels, merchandize, debts, sum and sums of money, securities for the same rights, credits and estate, real and personal, hereby assigned or mentioned or intended so to be, with their and every of their appurtenances, unto the said parties of the second part, and to the survivor of them, his heirs, executors, administrators and assigns, from henceforth forever, upon this special trust and confidence nevertheless, and to no other, and to the intent and purpose that they, the said parties of the second part, the survivor of them, his heirs, executors, administrators and assigns, do and shall with all convenient speed make sale and disposition of all and singular the estate, real and personal, hereby assigned for the most and best price they can get for the same, and use their best endeavours, by all lawful ways and means, to obtain, recover and receive into their hands and possession all and singular the said debts, sum and sums of money due and owing to the said R. & I. Phillips, and that after deducting the reasonable expenses of creating and executing this trust, they the said parties of the second part, the survivor of them, and his heirs, executors, administrators and assigns, shall pay and distribute the proceeds of the said assigned real and personal estate in manner and form following, that is to say :—First, to pay and satisfy in full, sundry small personal accounts due from the said Isaac Phillips, not exceeding eight hundred dollars, and bills of the same character due from the said Joseph L. Moss, not exceeding eight hundred dollars. Secondly, to pay and discharge in full to John Moss, Esquire, the full amount of his responsibilities, incurred by reason of his indorsements, as sterling bills of exchange, to take up drafts of Victor David of New Orleans, and others, which said indorsements were so made by the said John Moss, subsequent to the suspension of payment by the said R. & I. Phillips, not exceeding three thousand pounds sterling, with all damages, interest, and expenses on the said bills. Thirdly, to pay and satisfy to the said parties of the second part, the full amount of a certain judgment recovered by the Planters' Bank of Georgia, against the said R. & I. Phillips, for the payment of which, they, the said parties of the second part, have become sureties. Fourthly, to pay and satisfy in full to Thomas Dunlap of the city of Philadelphia, the sum of five hundred dollars due and owing to him from the said R. & I. Phillips, for professional legal service antecedent to this assignment. Fifthly, to pay and satisfy in full to Giovanni Baptista Strupper, and Ignacio Strupper, the sum of nine hundred and seventy dollars, being the amount collected for them, by the said R. & I. Phillips, under and by virtue of a power of attorney to recover a legacy due to them, the said Struppers in Italy ; and after paying and discharging in full, the foregoing sums to the several persons above named in the order specified, then to pay and satisfy in full, all and every the claim and claims of all the other creditors of them, the said R. & I. Phillips, if the balance of the said assigned estate shall prove sufficient so to do,

(Fassit *v.* Phillips.)

and if it shall not prove so sufficient, then rateably and in proportion, who shall, if resident in the United States, on or before the twenty-first day of October in the present year, at twelve o'clock noon, and if resident in Europe, on or before the twentieth day of October, in the present year, at twelve o'clock noon, execute and deliver to the said R. & I. Phillips a full, valid, and general release of their several and respective claims and demands against them, the said R. & I. Phillips."

Then followed the power of attorney to the assignees, &c.

This instrument was acknowledged on the 22d of June, 1837, and recorded on the same day.

The following is the schedule of the property alleged to belong to Joseph L. Moss, and not included in the assignment of June 22d.

"No. 1. All that certain three-story brick messuage or tenement and lot or piece of ground thereunto belonging, situate on the south side of Walnut street, in the city of Philadelphia, containing in front or breadth on Walnut street twenty-one feet, and in length or depth southward one hundred and seventy feet, to a thirty feet wide alley, lately laid out and opened, leading from the said Juniper street to Thirteenth street; bounded on the north by the said Walnut street, east by a messuage or lot of ground granted by Peter Fritz et ux. to Rowland Stevenson, south by above mentioned thirty feet wide alley, and west partly by a messuage or lot of ground lately granted by Joseph L. Moss et ux. to Sarah Maccoun and partly by the lot of ground next hereinafter described.

No. 2. All that certain piece of ground situate on the north side of the aforementioned thirty feet wide alley on the east side of Juniper street, in the city of Philadelphia, containing in breadth east and west fifty-nine feet, three inches; bounded on the north by the above-mentioned lot of ground lately granted by Joseph L. Moss et ux. to Sarah Maccoun, east by the lot of ground herein first described, south by the aforesaid thirty feet wide alley, and west by Juniper street aforesaid; subject with respect to the lot of ground last described to a certain covenant restraining the erection of buildings thereon, contained in a certain indenture from the said Joseph L. Moss et ux. to the said Sarah Maccoun, dated the twenty-first day of November, eighteen hundred and thirty-six; recorded in Deed Book S. H. F., No. 10, page 297; together with all the rights, privileges, appurtenances, &c. &c., thereunto belonging or in any way appertaining, &c.

No. 3. Also certain other lands and real estate in the states of Pennsylvania, Maryland and Illinois, not particularly known, and therefore not more particularly described and set forth."

The following is the schedule referred to in the bill of the pro-

perty alleged to belong to Isaac Phillips, and not included in the assignment.

"No. 1. All that four-story brick messuage or tenement, and all those three lots or pieces of ground hereinafter described, viz.: all that certain lot or piece of ground, situate on the south side of Mulberry or Arch street, at the distance of one hundred and twenty feet west from the west side of Thirteenth street, in the city of Philadelphia, containing in front on said Arch street twenty-two feet, and in length or depth extending southward one hundred and thirty-seven feet, to a twenty feet wide street called Paper alley; bounded east by a lot of ground granted by William Lawson, et ux. to William Johnson on ground-rent; south by Paper alley; west by the next described lot of ground, and north by Mulberry street aforesaid.

No. 2. All that certain lot or piece of ground, situate on the south side of Mulberry street at the distance of one hundred and forty-two feet west from the west side of Thirteenth street, containing in front or breadth on Mulberry street twenty-two feet, and extending in length or depth south one hundred and thirty-seven feet to said Paper alley; west by the next hereinafter described lot of ground, and north by Mulberry street aforesaid.

No. 3. Also, all that certain piece or lot of ground, situate on the south side of Mulberry street, at the distance of one hundred and sixty-four feet west from the west side of Thirteenth street, containing in front or breadth on Mulberry street twenty-two feet, and in length or depth southward to Paper alley, one hundred and thirty-seven feet; bounded east by the last above described lot of ground, south by the said Paper alley, west by a lot of ground granted by the said William Lawson et ux. to Joseph Donaldson on ground-rent, and north by Mulberry street aforesaid; together with all and singular the improvements, buildings, ways, streets, alleys, waters, water-courses, passages, rights, liberties, privileges, hereditaments and appurtenances whatsoever unto the said premises belonging or in any way appertaining; each of the said described three lots of ground, subject to a yearly ground-rent or sum of two hundred and thirty-one dollars each, payable half yearly, each on the twenty-third days of October and April, unto William Lawson, his heirs and assigns, without any deduction for taxes.

No. 4, &c. Also certain other lands and real estate in the states of Pennsylvania, Maryland and Illinois, not particularly known, and therefore not more particularly subscribed and set forth."

The following is the last schedule referred to in the bill.

"No. 1. All that certain lot or piece of ground, situate at the southeast corner of Walnut and Delaware Sixth streets, in the city of Philadelphia, containing in front on Walnut street one hundred and

ninety-eight feet, six inches, and extending of that same breadth, in depth two hundred and twenty feet south from Walnut street, then widening by an offset of six inches on the east side to the width of one hundred and ninety-nine feet, and extending of that increased width further in length or depth, southward two hundred and three feet to Prune street, on which it contains one hundred and ninety-nine feet; bounded by Walnut, Sixth and Prune streets.

No. 2. All those certain tracts of lands, lots, &c., situate in the states of Pennsylvania, Maryland, Illinois, &c., in part consisting of large tracts of land, lots, &c., situate at the termination of the Baltimore and Ohio Rail-road; and also, certain tracts and sections of land, lots, &c., amounting to about five thousand acres, situate in the state of Illinois: the above lands are not accurately known to the petitioners, and therefore are not more particularly described and set forth in this schedule."

The answer of the defendants, David Samuel and Joseph Mora Moss, the assignees, admitted the partnership of the complainants and that of the defendants, R. & I. Phillips, and the debt to the complainants as stated in the bill. They admitted also the deeds of 22d March, and 22d June, 1837; but they denied that they were fraudulent; because they insisted:—

1. That partners, or any other persons, although they be insolvent, may, in the absence of any bankrupt law, or restraining statute, convey a portion of their joint or separate property, or of both, upon such trusts as are contained in the deed of March 22d, 1837, which they insisted was executed under the direction of eminent counsel in New York, where the assigned property was; that in point of *fact*, it was all *joint*, and the debts to be paid, all *joint* debts; that it contained no such provision as the bill alleged, assigning "the partnership effects for the payment of separate debts;" they also stated the receipt of property under this deed, but asserted that it was all distributed under the trusts of the deed prior to December 1st, 1838; so that the trust was closed.

2. As to the deed of 22d June, 1837, they denied that it was fraudulent. They admitted that Joseph L. Moss had the legal estate of the house in Walnut street in him; but they averred that it was of no value whatever when the assignment was drawn, the liens upon it being of an amount greatly beyond its value; that it was not inserted, because the counsel who drew it advised them, that it was useless to insert it because it was of no value, and that if inserted, they might have refused to receive it; that it was sold, under execution, six months before the filing of the complainants' bill, for 150 dollars, being less than the amount of the first and second incumbrances.

3. They denied, that the assignors possessed any interest in the

(Fassit *v.* Phillips.)

property and real estate set forth in the schedules annexed to the complainants' bill.

4. They admitted the taking possession of the property passing under the deed of June 22d, 1837 ; stated the settlement of their accounts as assignees, and the injunction by Lizardi and others restraining their distribution of the fund, and their own bill in this Court against the complainants and others, for a distribution of it, and asking the advice of the Court, because it was a trust fund.

5. They admitted that the complainants had not released R. & I. Phillips.

6. They denied the'jurisdiction of the Court over the case, as not within the equity powers of the Court.

Mr. *Ingraham,* (with whom was Mr. *H. M. Phillips,*) for the assignees.

1. The only article of property which is admitted not to have passed under the assignment of June 22d, is the house and lot in Walnut street ; which did not produce the amount of the incumbrances upon it. The case of *Thomas* v. *Jenks,* (5 *Rawle,* 221,) decided, that where there was substantial separate property, the omission of it invalidated the assignment. There the chief justice says, that one partner had separate property to the value of several hundred dollars, and the other to the value of several thousand. That case therefore does not touch this. *Pratt* v. *Levan,* (1 *Miles,* 358.)

2. Whether the allegations of the bill are true or false, the complainants are not entitled to relief by this method of proceeding. If the assignment is good, they have no claim since they have not executed the release ; if bad, they do not require the aid of the equity powers of this Court, to obtain redress. There is no equity stated in the bill to call for the interference of the Court. If the Court see that no decree can be made at the final hearing, they will dissolve the injunction. *Story's Equity Pleading,* 260, 289. 2 *Madd. Chan.* 158. *Wilkin* v. *Wilkin,* (1 *Johns. Chan. Rep.* 117.)

3. The power to grant injunctions in such a case as this, is not expressly given by the act of 16th June, 1836, and cannot be inferred from any of its provisions. The intention was to give a limited equity jurisdiction ; and this Court will not extend it by construction.

Mr. *Meredith,* for the complainants.

1. The answer does not state what the liens on the Walnut-street property were, either in character or amount. The presumption is that it was sold clear of incumbrances ; and then you have property worth $8000 sold for $150. How does this case differ from *Thomas* v. *Jenks?* The principle of that case is, that every omission of 'property vitiates. There is no difference in the result in conse-

(Fassit v. Phillips.)

quence of a creditor having a judgment. It is said, that the bill does not pray relief, &c. We are not here upon demurrer or at a hearing upon bill and answer. The answer in fact admits all that is necessary for the complainants' case.

2. The jurisdiction of the Court is manifest. The 5th clause of the 13th section of the act of 1836, gives this Court the power and jurisdiction of a Court of Chancery, so far as relates to " the prevention and restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals." The word ' injunction,' is not used here, but the intention is manifest to give this Court all the powers possessed and usually exercised by the Courts of Equity in England, to restrain by injunction ; and there is no doubt of the power of those Courts to interfere in a case like the present. Besides, the second clause gives this Court equity powers in respect to trust moneys and property, which would be sufficient, independently of the express grant in the 5th clause.

Mr. *Randall,* for the releasing creditors, argued in support of the motion to dissolve the injunction.

PER CURIAM.—The charge of actual fraud is repelled by the answer ; and an implication of legal fraud cannot be raised from the admitted fact, that the house was left out of the assignment. In *Thomas* v. *Jenks,* a substantial benefit was reserved ; but here there was nothing of the sort. The legal title, incumbered as it is sworn to be, beyond the fee simple value, is a *caput mortuum,* which though it might have swelled the apparent amount of the schedule, could have held out but a deceptive promise to the creditors. It would therefore be useless, and perhaps mischievous, to suspend the execution of the trust till the hearing.

.    Injunction dissolved.